## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,** | |
| Plaintiff | **Case No. 6:21-cv-228** |
| v. | **JURY TRIAL DEMANDED** |
| **SAFELITE GROUP, INC.,** | |
| Defendant | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Safelite Group, Inc. ("Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1. GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2. Upon information and belief, Safelite Group, Inc. ("Safelite") is a domestic corporation organized and existing under the laws of Delaware, with a principal place of business located 7400 Safelite Way, Columbus, Ohio 43235. Safelite may be served through its registered agent in the State of Texas at Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

3.    Upon information and belief, Safelite sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing systems into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District.   Upon information and belief, Safelite specifically targets customers in the State of Texas and in this judicial District.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

5.    This Court has personal jurisdiction over Defendant.   Defendant has continuous and systematic business contacts with the State of Texas.   Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and apps) its services in the State of Texas and in this District.   Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

6.    Upon information and belief, Defendant maintains regular and established places of business in the State of Texas and specifically within this District (See Figures 1 and 2 below).



Figure 1[1]



Figure 2[2]

---

[1] Source, as visited on March 8, 2021: https://www.safelite.com/store-locator
[2] Source, as visited on March 8, 2021: https://www.safelite.com/store-locator

7.      Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established place of business in this District.

**PATENTS**

8.      GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194 Patent"); 7,490,086 ("the '086 Patent"); 9,152,943 ("the '943 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the '000 Patent") (hereinafter collectively referred to as "the GGS Patents").

9.      The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

10.     Raymond Anthony Joao invented the inventions described and claimed in the GGS Patents.

11.     The priority date of each of the GGS Patents is at least as early as July 31, 1999.

12.     The GGS Patents each include numerous claims defining distinct inventions.

13.     During prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea and there would be no preemption of the abstract idea or the field of the abstract idea.

14.     During prosecution of the '943 Patent, the patent examiner considered whether the claims of the '943 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the

pending claims are directed to an abstract idea and there would be no preemption of the abstract idea or the field of the abstract idea.

15.    GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent, the '086 Patent, the '943 Patent, and the '000 Patent (collectively, the "Asserted Patents").

16.    The '194 Patent relates generally to an apparatus and method for providing recruitment information, including a memory device for Storing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, and information regarding a job Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time. *See* Abstract, '194 Patent.

17.    The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information

regarding a job opening, position, assignment, contract, or project, responsive to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual. *See* Abstract, '086 Patent.

18. The '864 Patent relates generally to an apparatus, including a memory device for storing work schedule information or scheduling information for an individual, a transmitter for transmitting a job search request to a computer, wherein the computer is specially programmed for processing the job search request, for generating a message containing information regarding a job opening, a position, an assignment, a contract, or a project, and for transmitting the message to the apparatus in response to the job search request; a receiver for receiving the message; and a display for displaying at least some of the information contained in the message. *See* Abstract, '864 Patent.

19. The '943 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processes the information regarding a job search request or inquiry upon a detection of a job posting by at least one employer or at least one hiring entity or a posting of new or revised data or information from at least one individual or a group of individuals, automatically detects the occurrence of the searching event, and generates a message containing the information regarding a job opening, position, assignment, contract, or project, in response to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual. *See* Abstract, '943 Patent.

20. As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999. At that time, the idea of launching Safelite.com was still several years away.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

21.     The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

22.     Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

23.     Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

24.     The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

25.     After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor; (iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768, 11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001, Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

26.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims.

*K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).   It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.   *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

27.     The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

28.     After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

29.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.   In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.   *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).   It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.   *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

30.    The '864 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '864 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758.

31.    After conducting a search for prior art during the examination of the '864 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark; (ii) 5,758,324, 5/1998, Hartman; (iii) 5,832,497, 11/1998, Taylor; (iv) 5,862,223, 1/1999, Walker; (v) 5,884,270, 3/1999, Walker; (vi) 5,884,272, 3/1999, Walker; (vii) 5,978,768, 11/1999, McGovern; (viii) 6,157,808, 12/2000, Hollingsworth; (ix) 6,266,659, 7/2001, Nadkarni; (x) 6,370,510, 4/2002, McGovern; (xi) 6.381,592, 4/2002, Reuning; (xii) 6,398,556, 6/2002, Ho; (xiii) 6,408,337, 6/2002, Dietz; (xiv) 6,409,514, 6/2002, Bull; (xv) 6,466,91, 10/2002, Mitsuoka; (xvi) 6,718,340, 4/2004, Hartman; (xvii) 6,873,964, 3/2005, Williams; (xviii) 7,054,821, 5/2006, Rosenthal; (xix) 7,305,347, 12/2007, Joao; (xx) 7,523,045, 4/2009, Walker; (xxi) 2001/0042000 Al, 11/2001, Defoor, Jr.; (xxii) 2002/0002476 A1, 1/2002, Mitsuoka; (xxiii) 2002/0152316 A1, 10/2002, Dietz; and (xxiv) 2005/0010467 A1, 1/2005, Dietz.

32.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '864 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

33.     The '864 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Xerox, Amazon, Monster, HP, CareerBuilder, Microsoft, LinkedIn, and General Electric.

34.     The '943 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '943 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758/

35.     After conducting a search for prior art during the examination of the '943 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, Clark; (ii) 5,758,324, Hartman; (iii) 5,832,497, Taylor; (iv) 5,862,223, Walker; (v) 5,884,270, Walker; (vi) 5,884,272, Walker; (vii) 5,978,768, McGovern; (viii) 6,157,808, Hollingsworth; (ix) 6,266,659, Nadkarni; (x) 6,370,510, McGovern; (xi) 6,381,592, Reuning; (xii) 6,398,556, Ho; and (xiii) 6,408,337, Dietz.

36.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '943 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.     The '943 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such

technology leaders as British Telecom, Ricoh, AT&T, Hewlett-Packard, Yahoo!, Amazon, Monster.com, CareerBuilder, IBM, Ricoh, Microsoft, Robert half, and General Electric.

38.     The claims of the Asserted Patents are properly issued, valid, and enforceable.

## THE ACCUSED INSTRUMENTALITIES

39.     Upon information and belief, Defendant provides a web platform hosted on a server (www.safelite.com) comprising memory, processors, transmitters and/or receivers ("Accused Instrumentalities") through which Defendant provides auto glass repair & replacement services (including but not limited to windshield repair, windshield replacement, power window repair, side window replacement, and/or back glass replacement) through MobileGlassShops (wherein mobile auto glass technicians visit a customer's location and complete windshield repair and auto glass replacement services) and repair facilities in multiple locations. Defendant allows its customers to schedule an appointment for a repair and replacement service using its web portal, which provides recruitment information.

## COUNT I
## Infringement of U.S. Patent No. 6,662,194

40.     Plaintiff incorporates the above paragraphs by reference.

41.     Defendant has been on actual notice of the '194 Patent at least as early as the date it received service of this Original Complaint.

42.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

43.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      11

44.     Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.safelite.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides auto glass repair & replacement services (including but not limited to windshield repair, windshield replacement, power window repair, side window replacement, and/or back glass replacement) through MobileGlassShops (wherein mobile auto glass technicians visit a customer's location and complete windshield repair and auto glass replacement services) and repair facilities in multiple locations. Defendant allows its customers to schedule an appointment for a repair and replacement service using its web portal, which provides recruitment information.  *See* Figures 3-10 below.



Figure 3[3]

---
[3] Source, as visited on March 8, 2021: https://www.safelite.com/

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                        12



Figure 4[4]



Figure 5[5]



Figure 6[6]

---

[4] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/ServiceDetails.aspx?&start_type=fmg
[5] Source, as visited on March 8, 2021: https://www.safelite.com/auto-glass-services
[6] Source, as visited on March 8, 2021: https://www.safelite.com/

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          13



Figure 7[7]



Figure 8[8]

In-shop vs. mobile glass service

Figure 9[9]

---

[7] Source, as visited on March 8, 2021: https://www.safelite.com/auto-glass-services
[8] Source, as visited on March 8, 2021: https://www.safelite.com/auto-glass-services
[9] Source, as visited on March 8, 2021: https://www.safelite.com/mobile-auto-glass-repair

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    14



Figure 10[10]

45.     Upon information and belief, Defendant's Accused Instrumentalities include a memory device for storing at least one of work schedule information and scheduling information for at least one of an individual, an independent contractor, a temporary worker, and a freelancer. For example, Defendant's servers store and provide work schedule information for individual employees ("at least one of an individual, an independent contractor, a temporary worker, and a freelancer") of the Defendant such that the individual employees can be notified about customer orders, locations and scheduled appointments. *See* Figures 3 and 4 above. *See also* Figures 11-16 below.

---

[10] Source, as visited on March 8, 2021: https://www.safelite.com/mobile-auto-glass-repair



Figure 11[11]



Figure 12[12]

---

[11] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/VehicleDamage.aspx
[12] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/DamageSelection.aspx

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT



Figure 13[13]



Figure 14[14]



---

[13] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/QuoteDetails.aspx

[14] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/ScheduleDetails.aspx

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    17

Figure 15[15]



Figure 16[16]

46.    Upon information and belief, Defendant's Accused Instrumentalities include a receiver for receiving a first request, wherein the first request contains information regarding a request to obtain at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein the first request is received from a first communication device associated with an employer or hiring entity. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees of the Defendant when a customer ("employer or a hiring entity ") schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or hiring entity"). The scheduling information is used to notify individual employees about customer orders, locations and scheduled appointments. *See* Figures 4 and 11-15 above.

47.    Upon information and belief, Defendant's Accused Instrumentalities include a processing device for processing information contained in the first request, wherein the processing device generates

---

[15] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/ScheduleDetails.aspx

[16] Source, as visited on March 8, 2021: https://www.safelite.com/mobile-auto-glass-repair

a first message containing the at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer. For example, Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual employees of the Defendant. This timetable is displayed to the customer which allows the customer to then select an appropriate time when the order shall be serviced by the individual employee. *See* Figures 4 and 11-15 above.

48.    Upon information and belief, Defendant's Accused Instrumentalities further include a transmitter for transmitting the first message to the first communication device. For example, Defendant's servers transmit the first message to the first communication device (used by the customer) via Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). *See* Figures 14 and 15 above.

49.    Upon information and belief, Defendant provides the receiver wherein the receiver receives a second request, wherein the second request contains information for at least one of reserving, engaging, and requesting, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein at least one of the processing device processes the information contained in the second request and at least one of reserves, engages, and requests, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, the processing device generates a second message containing information regarding the second request, and the transmitter transmits a second message containing information regarding the second request to a second communication device

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    19

associated with the at least one of an individual, an independent contractor, a temporary worker, and a freelancer. For example, after the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving, engaging, or requesting, the services of the individual is sent to the Defendant's servers. Further, Defendant's servers transmit the second message to the Mobile Resource Management software (MRM3) loaded onto a technician's ("individual") smartphone ("second communication device"). *See* Figures 17-24 below.



Figure 17[17]



Figure 18[18]

---

[17] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/OrderConfirmation.aspx
[18] Source, as visited on January 15, 2021: https://fixmyglass.safelite.com/FixMyGlass/OrderConfirmation.aspx

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

To equip Safelite's technicians with the proper support to provide mobile service, the IT team developed MRM, a proprietary software that is loaded onto techs' smartphones. MRM represents a new way for mobile service professionals to interact with customers. It features everything a technician needs to provide an exceptional customer experience on the road, from daily work order lists and driving directions to secure payment.

Figure 19[19]

PACE's CXE Award to Safelite focused on our Mobile Resource Management (MRM), which is a custom software that automates the workflow process for mobile technicians. Last year, Safelite introduced the third iteration of MRM, which is used on Samsung Galaxy Note® II smartphones by Safelite's roughly 4,500 technicians.

MRM3 features everything a technician needs to provide an exceptional customer experience on the road. The flexible, event-driven workflow streamlines a technician's day. The home screen displays their daily work order list and map view to each location. The daily manifest can be changed as needed by the technician. They can start each job by collecting basic customer information and completing a digital pre-inspection of damage supported by photographs. They can update parts used for better customer records. And they can close with a safe, secure payment.

Figure 20[20]

**The Solution**

Pega's solution for Safelite is a mobile field service application built with Pega Field Service™. In keeping with Safelite's commitment to customer-driven solutions, company technicians and customers played an important role in determining the application's features.

The Safelite Mobile Resource Manager (MRM) currently runs on smartphones and automates critical processes, including clock in and out, tracking progress, sending work orders, processing credit cards, printing receipts, and capturing customer signatures.

Figure 21[21]

---

[19] Source, as visited on March 8, 2021: https://www.safelite.com/about-safelite/press-releases/safelite-autoglass-recognized-by-top-software-company-for-custom-technology-that-improves-both-the-technician-and-customer-experience

[20] Source, as visited on March 8, 2021: https://www.safelite.com/about-safelite/press-releases/safelite-wins-pace-cxe-award-for-innovation-for-mrm-technology

[21] Source, as visited on March 8, 2021: https://www.pega.com/customers/safelite-pega-field-service



Figure 22[22]

Figure 23[23]



Figure 24[24]

50.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

51.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '194 Patent, such infringement is necessarily willful and deliberate.  Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '194 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

52.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

53.     Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.  Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

54.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT II**
**Infringement of U.S. Patent No. 7,490,086**

55.     Plaintiff incorporates the above paragraphs by reference.

---

[24] Source, as visited on March 8, 2021: https://www.safelite.com/mobile-auto-glass-repair

56.     Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of this Original Complaint.

57.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

58.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

59.     Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.safelite.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides auto glass repair & replacement services (including but not limited to windshield repair, windshield replacement, power window repair, side window replacement, and/or back glass replacement) through MobileGlassShops (wherein mobile auto glass technicians visit a customer's location and complete windshield repair and auto glass replacement services) and repair facilities in multiple locations. Defendant allows its customers to schedule an appointment for a repair and replacement service using its web portal, which provides recruitment information.  *See* ¶ 33 above.

60.     Upon information and belief, Defendant's Accused Instrumentalities include a memory device, wherein the memory device stores information regarding an individual available for at least one of applying for and interviewing for at least one of a job, a job opportunity, and a hiring need, and further wherein the memory device stores information regarding a recruitment search request or inquiry. For example, Defendant's servers store information regarding mobile auto glass technician ("an individual available for at least one of applying for and interviewing for at least

one of a job, a job opportunity, and a hiring need") such that that a customer can be notified of which technician is available to service the customer's order. Further, Defendant provides a web portal which allows its customers to schedule an appointment for glass repair and replacement ("a job, a job opportunity, and a hiring need"). The portal presents to a customer a plurality of fields (including but not limited to the type of repair such as broken glass or motor, Vehicle Year, Make, Model) which allow the customer to enter personal, car and related damage details ("information regarding a recruitment search request or inquiry"). Defendant's servers receive, store (using a memory device) and use the customer details to calculate an estimated cost of repair and further schedule an appointment for repair. *See* ¶¶ 33 and 34 above.

61.   Upon information and belief, Defendant's Accused Instrumentalities include a processing device, wherein the processing device processes the information regarding a recruitment search request or inquiry upon a detection of an occurrence of a searching event, wherein the searching event is an occurrence of at least one of a job posting by at least one employer or at least one hiring entity, a posting of new or revised data or information from at least one individual or a group of individuals, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an interest by at least one employer or at least one hiring entity to fill a position, and an event which creates an interest by at least one individual to seek a position, wherein the processing device automatically detects the occurrence of the searching event, wherein the processing device utilizes the information regarding an individual stored in the memory device in processing the information regarding a recruitment search request or inquiry, and further wherein the processing device generates a message containing information regarding the individual, wherein the message is responsive to the recruitment search request or inquiry. For example, Defendant provides a web portal which

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                        25

allows its customers to schedule an appointment for glass repair and replacement ("occurrence of at least one of a job posting by at least one employer or at least one hiring entity… an event which creates an interest by at least one employer or at least one hiring entity to fill a position"). The portal presents to a customer a plurality of fields (including but not limited to the type of repair such as broken glass or motor, Vehicle Year, Make, Model) which allow the customer to enter car and related damage details. Defendant's servers receive, store (using a memory device) and use the customer details to calculate an estimated cost of repair and further schedule an appointment for repair. Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("message") which contains the work schedule information or the scheduling information ("information regarding an individual") of individual employees of the Defendant. This timetable helps the customer to select an appropriate time when the order shall be serviced by the individual employee/technician. *See* ¶ 36 above and Figures 3, 4, 13, 15 and 18-24 above.

62.    Upon information and belief, Defendant's Accused Instrumentalities include a transmitter, wherein the transmitter transmits the message to a communication device associated with an employer or hiring entity. For example, Defendant's servers transmit the message to the first communication device used by the customer ("employer or hiring entity"), causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). *See* ¶ 37 above.

63.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no

event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

64.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '086 Patent, such infringement is necessarily willful and deliberate.   Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '086 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

65.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.   Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.   As such, Defendant has been willfully blind to the patent rights of Plaintiff.

66.     Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

67.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III
### Infringement of U.S. Patent No. 9,760,864

68.     Plaintiff incorporates the above paragraphs by reference.

69.     Defendant has been on actual notice of the '864 Patent at least as early as the date it received service of this Original Complaint.

70.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

71.   Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

72.   Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.safelite.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides auto glass repair & replacement services (including but not limited to windshield repair, windshield replacement, power window repair, side window replacement, and/or back glass replacement) through MobileGlassShops (wherein mobile auto glass technicians visit a customer's location and complete windshield repair and auto glass replacement services) and repair facilities in multiple locations. Defendant allows its customers to schedule an appointment for a repair and replacement service using its web portal, which provides recruitment information.  *See* ¶ 33 above.

73.   Upon information and belief, Defendant's Accused Instrumentalities include a memory device or a database, wherein the memory device or the database stores work schedule information or scheduling information of or for a plurality of individuals, independent contractors, temporary workers, or freelancers. For example, Defendant's servers store and provide scheduling information of or for a plurality of individual employees of the Defendant such that the customer can be notified of when an individual is available to service the customer's order. Defendant's servers also store and provide work schedule information for individual employees of the Defendant such that the individual employees can be notified about customer orders, locations and scheduled appointments. *See* ¶¶ 33 and 34 above.

74.   Upon information and belief, Defendant's Accused Instrumentalities include a receiver, wherein the receiver receives a first request, wherein the first request contains information regarding a request to obtain work schedule information or scheduling information of or for an individual, an independent contractor, a temporary worker, or a freelancer, from among the plurality of individuals, independent contractors, temporary workers, or freelancers, wherein the first request is received from a first communication device associated with an employer or a hiring entity. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees of the Defendant when a customer ("employer or a hiring entity") schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or a hiring entity"). The scheduling information helps the customer to identify when the individuals are available for service the customer's order and book an appointment accordingly. *See* ¶ 35 above.

75.   Upon information and belief, Defendant's Accused Instrumentalities include a processor, wherein the processor is associated with a website, and further wherein the processor is specially programmed to process or to provide job search information, recruitment information, or recruitment-related information, wherein the processor processes information contained in the first request, wherein the processor or the apparatus generates a first message in response to the first request, and wherein the first message contains the work schedule information or the scheduling information of or for the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual employees of the Defendant. This timetable is displayed to the customer which allows the customer to then select

an appropriate time when the order shall be serviced by the individual employee. *See* ¶ 36 and Figures 3, 4, 13, 15 and 18-24 above.

76.     Upon information and belief, Defendant's Accused Instrumentalities include a transmitter, wherein the transmitter transmits the first message to the first communication device on, over, or via, the Internet or the World Wide Web, wherein the apparatus receives a second request, wherein the second request contains information for reserving, engaging, or requesting, the services of the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers transmit the first message to the first communication device (used by the customer) via Internet. Further, after the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving, engaging, or requesting, the services of the individual is sent to the Defendant's servers. *See* ¶ 37 and Figures 17-24 above.

77.     Upon information and belief, Defendant's Accused Instrumentalities process the information contained in the second request and generates a second message containing information regarding the second request, and further wherein the apparatus transmits the second message to a second communication device, wherein the second communication device is associated with the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers, in response to the second request, transmit a second message to the Mobile Resource Management software (MRM3) loaded onto a technician's ("individual") smartphone ("second communication device"). The message contains the appointment details such as where and when the appointment has been scheduled, and contact information of the customer ("information regarding the second request"). *See* Figures 17-24 above.

78.   The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

79.   To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '864 Patent, such infringement is necessarily willful and deliberate.  Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '864 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

80.   On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

81.   Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.  Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

82.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT IV
## Infringement of U.S. Patent No. 10,096,000

83.   Plaintiff incorporates the above paragraphs by reference.

84.   Defendant has been on actual notice of the '000 Patent at least as early as the date it received service of this Original Complaint.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                           31

85.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

86.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

87.     Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.safelite.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides auto glass repair & replacement services (including but not limited to windshield repair, windshield replacement, power window repair, side window replacement, and/or back glass replacement) through MobileGlassShops (wherein mobile auto glass technicians visit a customer's location and complete windshield repair and auto glass replacement services) and repair facilities in multiple locations. Defendant allows its customers to schedule an appointment for a repair and replacement service using its web portal, which provides recruitment information.  *See* ¶ 33 above.

88.     Upon information and belief, Defendant's Accused Instrumentalities include a memory device, wherein the memory device stores work schedule information or scheduling information for an employer or a hiring entity, or for an individual, an independent contractor, a temporary worker, or a freelancer. For example, Defendant's servers store and provide scheduling information for a customer ("employer or a hiring entity") such that the customer can be notified of when an individual is available to service the customer's order. *See* ¶¶ 33 and 34 above.

89.     Upon information and belief, Defendant's Accused Instrumentalities include a receiver, wherein the receiver receives a first request, wherein the first request contains information regarding a

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                32

request to obtain work schedule information or scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, wherein the first request is transmitted from a first communication device associated with an employer or hiring entity or associated with an individual, an independent contractor, a temporary worker, or a freelancer. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees of the Defendant when a customer ("employer or a hiring entity") schedules an appointment using a first communication device (such as the customer's mobile device, laptop or PC). The scheduling information helps the customer to identify when the individuals are available for service the customer's order and book an appointment accordingly. Defendant's servers also receive a first request containing information regarding scheduling information for the customer ("employer or a hiring entity") when a customer schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or hiring entity"). *See* ¶ 35 and Figures 4 and 11-15 above.

90.     Upon information and belief, Defendant's Accused Instrumentalities include a processing device, wherein the processing device is specially programmed for processing information contained in the first request, wherein the processing device generates a first message containing the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual employees of the Defendant. This timetable is displayed to the customer which allows the customer to then select an appropriate time when the order shall

be serviced by the individual employee. Alternatively, Defendant's servers generate a first message containing the work schedule information corresponding to the time selected by the customer, wherein the work schedule information is destined for one or more individual employees of the Defendant in order for them to service the order. *See* ¶ 36 and Figures 4 and 11-15 above.

91.     Upon information and belief, Defendant's Accused Instrumentalities include a transmitter, wherein the transmitter transmits the first message to the first communication device or to a second communication device. For example, Defendant's servers transmit the first message to the first communication device (used by the customer) via Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). Alternatively, where the first message is destined for one or more individual employees of the Defendant, Defendant's servers transmit the first message to a second communication device (such as a mobile device) associated with the one or more individual employees, notifying them of the pending appointment. *See* ¶ 37 and Figures 14 and 15 above.

92.     Upon information and belief, Defendant's Accused Instrumentalities process information contained in a second request, wherein the second request contains information for offering services of the individual, the independent contractor, the temporary worker, or the freelancer, to the employer or hiring entity, or contains information for the employer or hiring entity reserving or requesting the services of the individual, the independent contractor, the temporary worker, or the freelancer, wherein the information contained in the second request is based on the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, contained in the

first message. For example, after the customer selects the date and time of the appointment (from the timetable presented to the customer based on the first message) and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving or requesting the services of the individual employees of the Defendant is received by the Defendant's servers, wherein the second request contains or is based on the work schedule information or the scheduling information for the customer and/or the individual employees (as selected by the customer from the timetable presented according to the first message). The information contained in the second request is then relayed to the corresponding individual employee of the Defendant for subsequent servicing. For example, Defendant's servers may transmit such information to the Mobile Resource Management software (MRM3) loaded onto a technician's ("individual"). The message contains the appointment details such as where and when the appointment has been scheduled, and contact information of the customer ("information contained in the second request"). Alternatively, where the first message is destined for one or more individual employees of the Defendant, Defendant's servers receive and process a second request from the one or more individual employees of the Defendant when they confirm or otherwise choose to accept a submitted work order.  This second request contains the work order details ("information for offering services of the individual… to the employer or hiring entity") appointment location, date and time ("the second request is based on the work schedule information or the scheduling information for the employer, the hiring entity, the individual …. contained in the first message"). Further, the second request contains information for the customer reserving or requesting the services of the individual employee, which is then relayed back to the customer as a confirmation of their work order. *See* Figures 17-24 above.

93.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

94.    To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '000 Patent, such infringement is necessarily willful and deliberate.  Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '000 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

95.    On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

96.    Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.  Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

97.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff

**PRAYER FOR RELIEF**

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.    Declaring that Defendant has infringed each of the Asserted Patents;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    36

2.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's willful infringement of the Asserted Patents;

4.      Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

5.      Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

6.      Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Dated:  March 9, 2021

Respectfully Submitted

*/s/ René A. Vazquez*
René A. Vazquez
Virginia Bar No. 41988
rvazquez@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher Honea
chonea@ghiplaw.com
Texas Bar No.  24059967
Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

**ATTORNEYS FOR**
**GREATGIGZ SOLUTIONS, LLC**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT